Neal Weingart, Esq.
1001 SW Fifth Ave.
Suite 1415
Portland, Oregon 97204
Tel: 503-379-9933
Email: neal@nealweingartlaw.com

*Attorney for Plaintiff and the Alleged Class*
*Additional Counsel On Signature Page*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**EUGENE DIVISION**

| | |
|---|---|
| **CHET WILSON**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SKOPOS FINANCIAL, LLC d/b/a REPRISE FINANCIAL**,<br><br>Defendant. | Case No. 6:25-cv-00376-MC<br><br>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## I. INTRODUCTION

This case is straight forward: in an effort to sell its loan products and services, Defendant Skopos Financial, LLC d/b/a Reprise Financial ("Defendant" or "Reprise") inundates consumers whose cellphone numbers are on the National Do Not Call Registry with unsolicited telemarketing text messages absent any prior express consent. Such conduct violates the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA" or "Act"), and Plaintiff Chet Wilson ("Wilson" or "Plaintiff") filed this case on behalf of himself and an alleged Class of

all others similarly situated to put a stop to Reprise's unlawful conduct.

Rather than answer for its unlawful conduct, Reprise has moved to dismiss the complaint for two baseless reasons. First, Reprise—while citing to authority regarding a completely different section of the law concerning junk faxes—asserts that the case must be dismissed because the text messages were not "telephone solicitations" under the TCPA. This argument goes nowhere. Plaintiff specifically alleges that he received four text messages from Reprise "soliciting him to apply for and purchase Defendant's loan products and services, all sent at least more than thirty (30) days after he placed his number on the National Do Not Call Registry". (Compl., Dkt. 1, ¶ 15.) This is all that is required. "Telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person". 47 C.F.R. § 64.1200(f)(15). As explained further below, when a defendant sends text messages for the purpose of selling loans (as Reprise did here), the text messages are "telephone solicitations" within the meaning of the Act.

Next, Reprise makes the spurious argument that text messages are not considered calls under 47 U.S.C. § 227(c). It does so by claiming that "[a]lthough the Federal Communications Commission has implemented regulations defining text messages as telephone calls for purposes of 47 U.S.C. § 227(b) (containing prohibitions on the use of automatic telephone dialers), it has never done so for 47 U.S.C. 227(c) (dealing with persons on the NDNC)." (Dkt. 11 at 10.) The problem for Reprise is that the FCC **<u>has</u>** implemented regulations defining text messages as telephone calls for purposes of Section 227(c). *See Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486, 2024 U.S. Dist. LEXIS 1657676, at *17 (M.D.N.C. Aug. 12, 2024) ("The FCC has issued regulations and guidance confirming that text messages are included in the TCPA

prohibitions and the private right of action in § 227(c)(5).") Reprise is simply wrong on the law and its argument should be rejected.

Thus, and as explained further below, Reprise's Motion should be denied in its entirety.

## II. STATEMENT OF FACTS

Defendant Reprise is an auto-loan lender based in Texas. (Compl. ¶ 8.) To generate customer leads, Reprise engages in telemarketing by sending text message solicitations in hopes that recipients will apply for auto loans through Defendant, including to telephone numbers registered on the Do Not Call Registry. (*Id.* ¶¶ 13, 14.)

In Plaintiff's case, he has been the subscriber and sole customary user of the cellular telephone number at issue for at least the past five (5) years and the number had been on the Do Not Call Registry for at least thirty (30) days prior to his receipt of the text messages at issue in this case. (*Id.* ¶ 9.) Notwithstanding this, Reprise sent at least four (4) text messages to Plaintiff in November 2024 soliciting him to purchase its auto loan products. (*Id.* ¶ 15.) Each message was address to "Brian," which is not Plaintiff's name. (*Id.*)

Plaintiff has no relationship with Reprise, he never provided his cellular telephone number to Reprise, he never had a business relationship with Reprise, and he did not opt-in to receive any text message solicitations from Reprise. (*Id.* ¶¶ 16-20.)

Based on these facts, the Court should deny the instant Motion.

## III. ARGUMENT

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the

nonmoving party." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) (citation omitted). "A court may not consider evidence outside the pleadings unless it converts the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment and gives the nonmovant an opportunity to respond." *Rodrigues v. Ryan*, No. CV1408141PCTDGCESW, 2016 WL 1301654, at *4 (D. Ariz. Apr. 4, 2016), aff'd in part, 702 F. App'x 637 (9th Cir. 2017) (citations omitted).

The Court should deny Reprise's Motion to Dismiss. The purpose of the text messages was clearly to encourage the purchase of property, goods, or services, namely Reprise's loan products. Additionally, the FCC and courts throughout the country—including the Supreme Court and the Ninth Circuit—have determined that text messages are calls under the TCPA. Not surprisingly, Reprise fails to cite a single case which has adopted either of its arguments—likely because such a case does not exist. Its Motion should be denied.

### A. Because the text messages at issue were sent for the purpose of selling Reprise's auto loans, the messages were "telephone solicitations" within the meaning of the TCPA.

For its opening argument, Reprise asserts that Plaintiff's DNC Registry claim must be dismissed because the messages were not "telephone solicitations". (Dkt. 11. at 8-9.) This is supposedly so because, according to Reprise, "the FCC has determined that messages 'whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements'," and that "every word of the text messages at issue demonstrates that their purpose is to facilitate the completion of a loan application that was previously begun by a customer." (*Id.*) Fortunately, as explained below, for Plaintiff and the Class, Reprise's argument is without merit.

A brief review of the statute is helpful. To state a claim under Section 227(c), a plaintiff must "allege that the defendant made more than one telephone solicitation to him in a 12-month

period while his number was on the Do Not Call registry." *Jorge Valdes v. Nationwide Real Est. Executives, Inc.*, No. SACV2001734DOCJDEX, 2021 WL 2134159, at *4 (C.D. Cal. Apr. 22, 2021) (citing 47 U.S.C. § 227(c)(5); *Naiman v. Adjustable Bedding Concepts, Inc.*, No. 2:19-cv-0702, 2020 WL 5105801, at *3 (E.D. Cal. Aug. 31, 2020)). "Telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person". 47 C.F.R. § 64.1200(f)(15). The call or message need not explicitly solicit the sale of a good or service. Instead, calls and messages that "encouraged recipients to engage in future purchasing activity" are "telephone solicitations". *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (calls that encouraged users to redeem rewards points constitute telephone solicitations). The text messages at issue in this case plainly satisfy this definition, and Reprise's arguments to the contrary fail to persuade.

First, Reprise's citation to the FCC's 2006 Order is incomplete and is regarding the wrong section of the statute. That is, the full citation (which Reprise deceptively omits, *see* Mot. at 8, n.23) makes clear that the authority relied on by Reprise concerns the Act's bar against unsolicited fax advertisements, not telephone solicitations. The full statement from the FCC is "[w]e agree with those petitioners who argue that messages whose purpose is to facilitate, complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements **for purposes of the TCPA's facsimile advertising rules**." In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006) (emphasis added.)

Thus, Reprise's authority regarding the junk fax provisions of the Act is inapposite; this case has nothing to do with junk faxes or the TCPA's facsimile advertising rules. To the extent it

is relevant, the very next paragraph of the 2006 Order undercuts Reprise's argument. There, the FCC stated that "[i]n order for such messages to fall outside the definition of 'unsolicited advertisement,' they must relate specifically to existing accounts and ongoing transactions. Messages regarding new or additional business would advertise 'the commercial availability or quality of any property, goods, or services'..." (*Id.* ¶ 50.) Here, Plaintiff specifically alleged that he had no existing accounts or ongoing transactions (or indeed any other type of relationship) with Reprise and the plain text of the messages at issue demonstrate that the messages were regarding "new business".

Moreover, the messages were addressed to "Brian," which is not Plaintiff's name. So even if Reprise was correct (it isn't) that the messages are not telephone solicitations because "the text messages at issue demonstrates that their purpose is to facilitate the completion of a loan application that was previously begun by a customer"[1], the supposed loan application would have been submitted by "Brian", not Plaintiff. Importantly, TCPA consent must be provided by the current subscriber of the number, which is Plaintiff. *See* In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961, 7999 ¶ 72, 73 (2015) ("the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber" and "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based"). Thus, Reprise's arguments fall flat and its Motion should be denied.

The text messages at issue here are plainly "telephone solicitations." Indeed, Plaintiff

---

[1] If anything, Reprise admits that the text messages are telephone solicitations while making this argument. If the purpose of the message is to "facilitate the completion of a loan application," then the purpose is to encourage "the purchase or rental of, or investment in, property, goods, or services". It is common sense that a loan application is submitted to purchase a loan.

alleged that all of the messages were placed for the purpose of selling Reprise's loan products and services. (Compl. ¶ 15.) And this allegation is reinforced by the plain text of the messages, which Plaintiff screenshotted and inserted in his Complaint. (*Id.*) No amount of parsing the pleadings can obfuscate the true purpose of the calls: to sell loans. As one court faced with similar arguments put it, "[e]xcept for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money." *Whittaker v. Freeway Ins. Servs. Am., LLC*, Case No. 22-cv-8042, 2023 U.S. Dist. LEXIS 6018, at *5 (D. Ariz. Jan. 12, 2023).

At the end of the day, the Court must approach the purpose of the message "with a measure of common sense" *Chesbro*, 705 F.3d at 918. Reprise did not text Plaintiff to ask him if he wanted to go see a movie on Friday night—it texted him to sell a loan. This is all that is required for the TCPA's protections against unsolicited telephone solicitations to be triggered. *See Bennett v. GoDaddy.com LLC*, No. CV-16-03908-PHX-ROS, 2019 U.S. Dist. LEXIS 59766, 2019 WL 1552911, at *8 (D. Ariz. Apr. 8, 2019) ("[I]t is the purpose behind a call that controls, not what happened during the call.") *Mantha v. Quotewizard.com, LLC*, No. CV 19-12235-LTS, 2021 WL 6061919, at *7 (D. Mass. Dec. 13, 2021), *report and recommendation adopted*, No. CV 19-12235-LTS, 2022 WL 325722 (D. Mass. Feb. 3, 2022) (finding that calls placed to offer insurance quotes were "telephone solicitations"); *Miholich v. Senior Life Ins. Co.*, 2022 U.S. Dist. LEXIS 23981, 2022 WL 410945, *5 (S.D. Cal. 2022), *reconsideration denied*, 2022 U.S. Dist. LEXIS 86543, 2022 WL 1505865 (S.D. Cal. 2022) ("The FAC alleges that the text messages advertised 'Financed Leads,' contained a link to [a] webinar provided by Defendant, and were 'an attempt to promote or sell Defendant's services'."); *Chesbro*, 705 F.3d at 918 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service

where the implication is clear from the context."); *Orea v. Nielsen Audio, Inc.*, 2015 U.S. Dist. LEXIS 54916, 2015 WL 1885936, *3 (N.D. Cal. 2015) ("A call that encourages future purchasing activity may be a telephone solicitation, even if the sales pitch is not explicitly contained in the call itself."); *Fiorarancio v. WellCare Health Plans, Inc.*, 2022 U.S. Dist. LEXIS 5297, 2022 WL 111062, *3 (D.N.J. 2022) ("[W]e know from common experience that free offers often come with strings attached. . . . Thus, while Defendant's messages may have been informational on their face, it is plausible that they were part of a larger marketing, or profit-seeking, scheme and, as such, fall within the TCPA's prohibition."); *Faucett v. Move, Inc.*, 2023 U.S. Dist. LEXIS 45655, 2023 WL 2563071, *4 (C.D. Cal. 2023) ("[T]elephone solicitation' encompasses calls 'referring a consumer to another entity if the purpose of the referral is to encourage a purchase, even if a purchase from another entity or a future purchase.' Thus, to engage in 'telephone solicitation, a caller does not need to directly offer property or services for sale, but may merely encourage the future purchase of property or services.").

Simply put, it is common sense that text messages regarding loan applications are sent for the purpose of encouraging the purchase of loans. Accordingly, the assertion that Plaintiff has not alleged the receipt of more than one telephone solicitation falls flat, and the Motion should be denied.

**B. Text messages are calls under the TCPA**

Next, Reprise makes the meritless argument that text messages are not "calls" under Section 227(c) of the TCPA. While it acknowledges that the FCC "has implemented regulations defining text messages as telephone calls for purposes of 47 U.S.C. § 227(b) (containing prohibitions on the use of automatic telephone dialers)", Reprise claims that the FCC "has never done so for 47 U.S.C. 227(c) (dealing with persons on the NDNC)." (Dkt. 11 at 10.) This is

simply false. “The FCC has issued regulations and guidance confirming that text messages are included in the TCPA prohibitions and the private right of action in § 227(c)(5).” *Hudson*, 2024 U.S. Dist. LEXIS 1657676, at *17.

As the *Hudson* court explained, “[e]ffective March 26, 2024, the FCC amended [the regulation] to confirm that the regulations apply to text messages sent to wireless telephone numbers, and the regulation now provides that: ‘[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls or <u>text messages</u> to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, ‘Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991’.” *Id*.

Additionally, and though this amendment was not enacted until March 26, 2024, the FCC broke no new ground in codifying the rule that text messages are calls. The FCC explained its amendment by stating that “[t]he Commission adopts the proposal to codify the National Do Not Call Registry’s existing protections to text message. . . The Commission’s action is consistent with Federal court opinions”. Targeting and Eliminating Unlawful Text Messages, 89 Fed. Reg. at 5099.

Indeed, courts for more than a decade have held that text messages are calls under the TCPA. *See, e.g., Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) (“[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].”); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) (“a text message is a 'call' within the meaning of the TCPA”); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (“We now hold that the owner and subscriber of a phone with a number listed on the Do-Not-Call Registry has suffered an injury in fact when unsolicited telemarketing calls or

texts are sent to the number in putative violation of the TCPA."); *Mattson v. Quicken Loans, Inc*., 2018 U.S. Dist. LEXIS 85883, at *7 (D. Or. May 22, 2018) ("Under the TCPA, a text message is a 'call'."); *Williams v. Myler Disability, LLC*, No. 3:20-cv-00275-FDW-DCK, 2020 U.S. Dist. LEXIS 211914, 2020 WL 6693134, at *6 (W.D.N.C. Nov. 12, 2020) ("Reading together other courts' interpretations of the TCPA and extending relevant Fourth Circuit precedent related to receipt of calls under the TCPA, the Court finds Plaintiff's receipt of Defendant's two unsolicited text messages asking Plaintiff to call Defendant to apply for disability benefits are the kind of harm the TCPA protects against"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) ("[S]everal persuasive decisions conclude that Section 227(c)(5) confers a claim on a person receiving more than one voice call or text message."); *Scanlon v. Manscaped, LLC*, 2020 U.S. Dist. LEXIS 265925, at *6 (D. Mass. Dec. 14, 2020) ("It is undisputed that the prohibition against 'calls' under the TCPA includes text messages."); *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 U.S. Dist. LEXIS 124614, at *5 n.1 (N.D. Iowa June 9, 2022) ("It is undisputed that a text message is a call under the TCPA"); *see also* In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961 (2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are.").

Thus, the FCC, the United States Supreme Court, the Ninth Circuit, and district courts throughout the country have all held that text messages are calls under the TCPA. Reprise cites no authority holding otherwise. Its Motion should be denied. As for Reprise's brief argument in a footnote on the last page of its Motion that the case should also be dismissed under Rule 12(b)(1) for lack of standing (again with no supporting authority cited), the Ninth Circuit has weighed in on that, too. *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023) (finding standing in

a case brought under § 227(c) and holding that "[a]s Hall alleges that she was the owner and subscriber of a cell phone number on the Do-Not-Call Registry that received unsolicited text messages in violation of the TCPA, she has stated an injury in fact sufficient to satisfy Article III."); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (violation of the TCPA is "a concrete injury in fact sufficient to confer Article III standing"); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1117-18 (9th Cir. 2022) (same); *Chennette v. Porch.com, Inc.,* 50 F.4th 1217, 1222 (9th Cir. 2022) (same).

**C. The above-cited authority is still good law after *Loper Bright***

Finally, near the end of its brief and immediately after incorrectly stating that the FCC has never implemented regulations clarifying that a text message is a call for purposes of Section 227(c), Reprise argues that "[e]ven if it had done so, however, the FCC's ability to expand the category of persons upon which Congress bestowed a cause of action is doubtful, particularly given the Supreme Court's recent directive that '[i]t is emphatically the province and duty of the judicial department to say what the law is." (Mot. at 10.) Reprise is of course referring to the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). However, *Loper Bright* does not change the analysis here.

First, the Supreme Court in *Loper Bright* stated that its holding "does not call into question prior cases that relied on the *Chevron* framework . . .[t]he holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology." 603 U.S. at 412. Importantly and once again, the Supreme Court has already held that text messages are calls under the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].") That holding fits squarely into the *Loper*

*Bright* holding regarding *stare decisis* in a post-Chevron world.

Moreover, as one court recently observed in a TCPA case, "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, 2025 U.S. Dist. LEXIS 35547, at *3 (W.D. Tex. Feb. 27, 2025). Relying on the FCC's expertise is appropriate even after *Loper Bright*. Indeed, the Supreme Court held that "although an agency's interpretation of a statute cannot bind a court, it may be especially informative to the extent it rests on factual premises within the agency's expertise." *Loper Bright*, 144 S. Ct. at 2267 (citations and quotations omitted). This is particularly true with the TCPA, where "Congress expressly conferred discretionary authority on the FCC to flesh out the TCPA". *Lyman v. Quinstreet, Inc.*, 2024 U.S. Dist. LEXIS 123132, at *11 (N.D. Cal. July 12, 2024) (citing 47 U.S.C. § 227(c)); *Lirones v. Leaf Home Water Sols., LLC*, 2024 U.S. Dist. LEXIS 165900 at *18 (N.D. Ohio Sept. 16, 2024 (same). As in *Lyman*, the Court can "accord[] due respect to the FCC's interpretation" and understand that it "need[] only 'independently identify and respect such delegation[] of authority, police the outer statutory boundaries of [that delegation], and ensure that [the agency exercises its] discretion consistent with the APA.". *Id.* (citing *Loper Bright*.) The *Lyman* court concluded that the FCC's interpretation of the TCPA "is 'especially informative' and particularly persuasive. . .[i]n any event, however, the Court would reach the same conclusion in the absence of any FCC interpretation of the TCPA's statutory text." This Court should follow suit.[2]

In conclusion, holding that text messages are not calls under the TCPA would fly in the

---

[2] It is curious and worth noting that on one hand Reprise contends that the FCC's determinations are no longer valid when it comes to the FCC's determination that text messages are calls, while on the other hand Reprise cites to the FCC's 2006 Order regarding junk faxes to argue that the text messages here are not "telephone solicitations".

face of not just the FCC and appellate precedent, but the very purpose of the TCPA itself. As Justice Kavanaugh aptly put it:

> Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints.
>
> For nearly 30 years, the people's representatives in Congress have been fighting back . . .
>
> In 1991, Congress passed and President George H.W. Bush signed the Telephone Consumer Protection Act. The Act responded to a torrent of vociferous consumer complaints about intrusive robocalls . . .
>
> A leading Senate sponsor of the TCPA captured the zeitgeist in 1991, describing robocalls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.' 137 Cong. Rec. 30821 (1991).

*Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613-15 (2020). Interpreting the statute in the way Reprise does would frustrate the "nearly 30 years" of "fighting back" done by "the people's representatives in Congress". As, "[t]he role of the courts in interpreting a statute is to give effect to Congress's intent," the Court should reject Reprise's efforts to upend the TCPA. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). Congress did not intend for its law regulating telemarketing to be powerless to stop telemarketers using a newer technology (text messages) to hound consumers. As the *Lyman* court explained, Congress's purpose in enacting Section 227(c) was "to protect residential telephone subscribers' privacy rights to avoid telephone solicitations to which they object." *Lyman*, 2024 U.S. Dist. LEXIS 123132, at *10. Those privacy interests do not depend on whether the telephone solicitation is a voice call or a text message call.

## IV. CONCLUSION

Defendant's Motion is completely devoid of merit and should be denied in its entirety.

The text messages are plainly telephone solicitations, text messages are calls under the TCPA, and Defendant has failed to cite a single case adopting its arguments. Accordingly, the Court should deny Defendant's Motion and order such additional relief it deems necessary and appropriate.

Respectfully submitted,

Dated: April 18, 2025

**CHET WILSON**, individually and on behalf of all others similarly situated,

By: _/s/ Patrick H. Peluso_________________
One of Plaintiff's Attorneys

Neal Weingart, Esq.
1001 SW Fifth Ave.
Suite 1415
Portland, Oregon 97204
Tel: 503-379-9933
Email: neal@nealweingartlaw.com

Patrick H. Peluso*
ppeluso@pelusolawfirm.com
**PELUSO LAW, LLC**
865 Albion Street, Suite 250
Denver, Colorado 80220
Telephone: (720) 805-2008

Attorneys for Plaintiff and the Alleged Class
**pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was filed via the Court's electronic filing system on April 18, 2025, which will transmit a copy of such papers to all counsel of record.

*/s/ Patrick H. Peluso*