IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| CHET WILSON, *individually and on behalf of all others similarly situated*,<br><br>　　　　Plaintiff,<br>　　v.<br><br>SKOPOS FINANCIAL, LLC<br>*d/b/a* REPRISE FINANCIAL,<br><br>　　　　Defendant. | Case No. 6:25-cv-00376-MC<br><br>OPINION AND ORDER |

MCSHANE, Judge:

Plaintiff Chet Wilson brings this putative class action against Defendant Skopos Financial d/b/a Reprise Financial, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending solicitous text messages to phone numbers, like Plaintiff's, on the national do-not-call registry ("DNC Registry"). Compl. ¶ 30–36, ECF No. 1. Defendant now moves to dismiss the Complaint, arguing that the messages at issue are not "solicitations" under the TCPA and that the protections of the DNC Registry should not apply to text messages. Def.'s Mot. Dismiss 2, ECF No. 11. Defendant's Motion is DENIED, for the reasons explained below.

**BACKGROUND[1]**

Plaintiff is a resident of Florence, Oregon. Compl. ¶ 3. Defendant is an auto-loan lender based in Texas. *Id.* at ¶ 8. At least 30 days after Plaintiff registered his phone number on the DNC

---

[1] At the motion to dismiss stage, the Court takes Plaintiff's allegations as true. *See Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000).

1 – Opinion and Order

Registry, that number received the following four text messages from Defendant. *Id.* at ¶ 9.

> On November 14, 2024: ". . . BRIAN, this is Julie with Reprise Financial. We received your loan request through LendingTree. Please log in at RepriseFinancial.com to complete . . ."
>
> On November 15, 2024: ". . . BRIAN, this is Julie with Reprise Financial. We received your loan request through LendingTree. Please log in at RepriseFinancial.com to complete . . ."
>
> On November 20, 2024: ". . . Brian, this is Jamie with Reprise Financial with a reminder to complete your application. Please log in at RepriseFinancial.com to review . . ."
>
> On November 22, 2024: ". . . Brian, this is Jamie with Reprise Financial. Just a reminder to log in at RepriseFinancial.com to complete your application and review next . . ."

*Id.* at ¶ 15. Plaintiff has been the sole customary user of this phone number for at least five years, but "Brian" is not Plaintiff's name. *Id.* at ¶¶ 9, 16. Plaintiff believes Defendant sent the messages "intending to reach someone other than Plaintiff," as he has never provided his number to Defendant, never had a business relationship with Defendant, and never opted-in to receive text messages from Defendant. *Id.* at ¶ 16–19.

Plaintiff filed his Complaint on March 4, 2024, alleging that Defendant violated the TCPA by sending those four text messages to a number on the DNC Registry. *Id.* at ¶¶ 30–36. The Complaint further alleges that, "[a]s part of its business practice, Defendant sends telemarketing solicitations via text message to consumers in hopes that they will apply for auto loans through Defendant." *Id.* at ¶ 13. Without providing individual examples, Plaintiff contends that Defendant conducts "a wide-scale telemarketing campaign" where it "repeatedly sends unsolicited telemarketing text messages to consumers," including those on the DNC Registry. *Id.* at ¶¶ 14, 20. Plaintiff seeks to bring a class action on that basis, claiming the unauthorized messages caused him and others harm, like aggravation, nuisance and invasion of privacy, wear and tear on their telephones, consumption of battery life, lost cellular minutes, and loss of value. *Id.* at ¶ 21.

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## **DISCUSSION**

Plaintiff's Complaint asserts one cause of action under 47 U.S.C. § 227(c)(5) for violation of 47 C.F.R. § 64.1200(c). Compl. ¶¶ 30–36. Section 227(c)(5) provides a private right of action to any person who receives "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of" § 64.1200(c). § 227(c)(5); *see also Barton v. JMS Assoc. Mktg., LLC*, No. 21-35836, 2023 WL 2009925 (9th Cir. Feb. 15, 2023) (finding a private right of action under § 227(c)(5) for violation of § 64.1200(c)(2)). Section 64.1200(c) provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." § 64.1200(c)(2). "The term *telephone solicitation* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." § 64.1200(f)(15); § 227(a)(4) (emphasis in the original). It does not include calls or messages sent to someone with their "prior express invitation

or permission." *Id.*

Defendant moves to dismiss the Complaint, arguing Plaintiff has failed to state a claim for relief because: (1) the text messages at issue do not constitute "telephone solicitations" as defined by the TCPA and (2) § 227(c) creates a cause of action for "telephone calls," not text messages. Taking each argument in turn, the Court denies Defendant's Motion. Def.'s Mot. 8–11.

**I. The Complaint sufficiently alleges that Plaintiff received "telephone solicitations."**

Whether a contact is a "solicitation" turns "on the purpose of the message." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14098 ¶ 141 (June 26, 2003)). Courts are to "approach the problem with a measure of common sense." *Id.* In *Chesbro*, the plaintiff received "robot-calls" that "urged the listener to 'redeem' his Reward Zone points, directed him to a website where he could further engage with the [points], and thanked him for 'shopping at Best Buy.'" *Id.* The Ninth Circuit concluded that the messages were solicitations because, although there was no explicit mention to buy a good or service, the context of messages clearly implied an encouragement to make future purchases, as the points had no other use. *Id.* Contrarily, in another Ninth Circuit case, the plaintiff received an automated text asking him to enter a validation code on the defendant's website to complete a registration that the plaintiff had initiated. *Aderhold v. car2go N.A. LLC*, 668 F. App'x 795, 796 (9th Cir. 2016). The Ninth Circuit ultimately dismissed the claims due to consent, but in so holding, the Ninth Circuit explained that the message did not constitute "telemarketing" because it "contain[ed] no content encouraging purchase of [the defendant's] services. The message was directed instead to completing the registration process initiated by [plaintiff] and to validating personal information." *Id.* The Ninth Circuit agreed with "the FCC's determination that such messages, 'whose purpose is to facilitate,

complete, or confirm a commercial transaction that the recipient has previously agreed to enter into with the sender are not advertisements.'" *Id.* (quoting *In re Rules & Regs. Implementing the Tel. Consum. Prot. Act of 1991*, 21 FCC Rcd. 3787, 3812 ¶ 49 (Apr. 6, 2006)).

Defendant here argues that "every word of the text messages at issue demonstrates that their purpose is to facilitate the completion of a loan application that was previously begun by a customer." Def.'s Mot. 8. Defendant contends that the only plausible inference from the Complaint is that it sent the messages trying to complete an application that a consumer had previously initiated; consequently, nothing indicates that the messages were sent with the purpose of securing new business. Plaintiff even acknowledges that he believed Defendant placed the texts intending to reach someone other than him. Compl. ¶ 16. Therefore, because the texts were sent to inform the recipient on how to complete his loan, they cannot be considered solicitations, according to Defendant.

The Court disagrees. Defendant's argument relies implicitly on the recipient's consent to convert an otherwise solicitous messages into a "purely informational" message. Here, however, the recipient did not consent. The Complaint alleges that Plaintiff has no relationship with Defendant, has never provided his number to Defendant, has never had a business relationship with Defendant, and did not opt-in to receive any text messages from Defendant. There is nothing to indicate that Defendant had some existing account or ongoing transaction with Plaintiff. Assuming the truth of those allegations, the natural inference is that Defendant sent the messages to Plaintiff's phone number, pretextually referencing a loan application in order to promote its loan services to Plaintiff. The Court sees no other reason—and, notably, Defendant proffers no alternative reason—for why an auto-loan lender would reach out to a phone number on the DNC Registry that it has no existing relationship with and direct it to its website. As highlighted by

Plaintiff, *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. CV-22-8042-PCT-DGC, 2023 WL 167040 (D. Ariz. Jan. 12, 2023) presents a similar dispute. In *Whittaker*, the plaintiff received voicemails purporting to be following up on a request for an insurance quote and asking plaintiff to call back to hear more about how to save money on car insurance. The district court explained that "[e]xcept for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money." *Id.* at *2. Granted, this matter differs from *Whittaker* in that Defendant here did not mention anything about saving money or promote any specific products. Beyond encouraging Plaintiff to complete a loan application through Defendant's website, the messages did not include an explicit encouragement to buy anything, they did not contain any price quotes, and they did not refer the recipient to another entity for purposes of selling anything. Nonetheless, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Chesbro*, 705 F.3d at 918. Here, common sense dictates suspicion. It is plausible that the messages, although informational on their face, were a part of a larger marketing scheme. The Court is reluctant to hold otherwise, as it could permit entities to circumvent the DNC Registry by addressing some unidentifiable person in the communication and claiming he or she initiated contact. With some preliminary discovery, the true purpose and intended recipient of the text messages will be better evaluated.

The Court therefore declines to dismiss the Complaint, finding that it plausibly alleges Defendant initiated the text messages to a number listed on the DNC Registry "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

## II. Text messages are "calls" for purposes of § 227(c)(5).

Defendant raises a secondary argument in favor of dismissal. It contends that, because §

227(c)(5) explicitly references "telephone calls" in its cause of action, it does not allow for plaintiffs to bring TCPA claims based on text messages sent in violation of the DNC Registry. Specifically, Defendant argues that only Congress has the authority to dictate who has a cause of action under the TCPA and "there is absolutely no basis for the FCC's conclusion that Congress (in 1991) meant the term 'call' to mean 'text call.'" Def.'s Reply 7. Defendant is incorrect. The cause of action provided in § 227(c)(5) includes text messages.

The TCPA generally targets two types of unsolicited phone calls: those made using automatic dialers, 42 U.S.C. § 227(b), and those made in contravention of do-not-call registries, 42 U.S.C. § 227(c). For both, Congress explicitly conferred on the FCC the authority to promulgate implementing regulations. *See* §§ 227(b)(2), 227(c)(1)–(4). Through those regulations, the FCC has expanded the TCPA to apply to text messages. First, § 227(b)'s protections against automatic dialers were clarified as applying to both telephone calls and text messages issued without the recipient's consent. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14115 ("We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. . . . This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls . . . . Congress found that automated or prerecorded telephone calls were a greater nuisance and invasion of privacy than live solicitation calls."); *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 107 (July 10, 2015) ("Glide raises the issue of whether SMS text messages are subject to the same consumer protections under the TCPA as voice calls. We reiterate that they are."); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("a text message is a 'call' within the meaning of the TCPA"); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is

undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).""). Recently, the FCC clarified "that text messages are included in the TCPA prohibitions and the private right of action in § 227(c)(5)." *See Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *8 (M.D.N.C. Aug. 12, 2024), *report and recommendation adopted*, No. 1:23-CV-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024). Indeed, in 2024, the FCC explained: "The Commission adopts the proposal to codify the National DNC Registry's existing protections to text messages. Texters must have the consumer's prior express invitation or permission before sending a marketing text to a wireless number in the DNC Registry." *Targeting and Eliminating Unlawful Text Messages, Implementation of the Telephone Consumer Protection Act of 1991, Advanced Methods to Target and Eliminate Unlawful Robocalls*, 89 Fed. Reg. 5098, 5101, 5099 (Jan. 26, 2024). Defendant's argument that the FCC lacks authority to do so is undermined by the statutory structure of the TCPA, which explicitly delegates such authority, as well as the vast applicable case law which abides by the FCC's regulations and guidance.

Moreover, the FCC's decision to include text messages is congruent with Congress's overarching goals for the TCPA. Congress enacted the TCPA "to address a growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy and even a risk to public safety." *2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14018. Section 227(c) specifically targets "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). With those goals in mind, the "basis" for the FCC's conclusion becomes abundantly clear: unsolicited text messages invade the privacy and disturb the solitude of their recipients. *See Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017). They should therefore be included within the purview of the DNC Registry's protections. The mere fact that Congress did not envision the

ubiquitousness of text messaging in 1991 does not mean the FCC's conclusion lacks support. On the contrary, as technology has developed over the years, so too has our understanding of the TCPA's protections. *See 2003 Rules & Reguls.*, 18 F.C.C. Rcd. at 14017 ("significant changes in the technologies and methods used to contact consumers . . . warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA"). It cannot be argued in good faith that text messages are so categorically different from phone calls that the former cannot be considered an invasion of consumer privacy when directed at numbers on the DNC Registry.

On this point, Defendant is without support. The Court concludes that unsolicited text messages sent in violation of the DNC Registry can give rise to a cause of action under § 227(c)(5).

## **CONCLUSION**

For the reasons state above, Defendant's Motion to Dismiss, ECF No. 11, is DENIED.

IT IS SO ORDERED.

DATED this 21st day of July 2025.

                                                  _____s/Michael J. McShane_____
                                                           Michael McShane
                                                    United States District Judge